**UNITED STATES DISTRICT COURT**       **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:11-CR-220(1) |
| | § | |
| AMADOR SOTO, SR. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Amador Soto, Sr.'s ("Soto") Motion for Sentence

Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release) (#205), wherein he requests

the court to grant him a reduction in sentence and immediate release from confinement.   The

Government filed a response in opposition to the motion (#211).   United States Probation and

Pretrial Services ("Probation") conducted an investigation and recommends that the court deny

Soto's motion for compassionate release.   Having considered the pending motion, the

Government's response, Probation's recommendation, the record, and the applicable law, the court

is of the opinion that the motion should be denied.

I.      Background

On November 9, 2011, a grand jury in the Eastern District of Texas returned a single-count

Indictment charging Soto and three codefendants with Conspiracy to Possess with Intent to

Distribute Cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846.   On March 24, 2014, Soto

pleaded guilty to the sole count of the Indictment pursuant to a non-binding plea agreement.   On

October 8, 2014, the court sentenced him to 135 months' imprisonment, followed by a 5-year term

of supervised release.   Soto did not appeal his conviction or sentence, but on October 15, 2015,

he filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255,

challenging his sentence and claiming that his counsel rendered ineffective assistance.  On January 29, 2018, the court dismissed his motion with prejudice.  Soto is currently housed at Federal Correctional Institution Hazelton ("FCI Hazelton"), located in Bruceton Mills, West Virginia.  His projected release date is April 15, 2023.

II.     Appointment of Counsel

Soto requests the appointment of counsel to assist him in filing a motion for sentence reduction (compassionate release) under 18 U.S.C. § 3582(c).  There is no constitutional right to appointed counsel in post-conviction proceedings.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v. Idaho*, ___ U.S. ___, 139 S. Ct. 738, 749 (2019); *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1172 (2018); *In re Sepulvado*, 707 F.3d 550, 554 (5th Cir.), *cert. denied*, 571 U.S. 952 (2013).  Specifically, the Supreme Court of the United States has stated:

> Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further.  Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals.  We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, *a fortiori*, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process.

*Finley*, 481 U.S. at 555 (internal citations omitted).

The court may, however, in the interest of justice, appoint counsel to assist a defendant in the pursuit of post-conviction relief where a defendant has raised nonfrivolous claims with factually and/or legally complex issues.  *See United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the

discretion of the district court."); *accord United States v. Hereford*, 385 F. App'x 366, 368 (5th Cir. 2010).

> The exercise of discretion in this area is guided . . . by certain basic principles. When applying this standard and exercising its discretion in this field, the court should determine both whether the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing this claim.

*United States v. Molina-Flores*, No. 3:16-CR-130-N (19), 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018) (quoting *Jackson v. Coleman*, No. 3:11-cv-1837, 2012 WL 4504485, at *4 (M.D. Pa. Oct. 2, 2012)); *see Scoggins v. MacEachern*, No. 04-10814-PBS, 2010 WL 3169416, at *1 (D. Mass. Aug. 10, 2010) ("In order to obtain appointed counsel, 'an indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel.' The rare cases warranting appointment of counsel in the interests of justice typically involve nonfrivolous claims with factually and/or legally complex issues and a petitioner who is severely hampered in his ability to investigate the facts." (quoting *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986))).

Soto is not entitled to the appointment of counsel to assist him with seeking a sentence reduction or compassionate release under 18 U.S.C. § 3582. *See Finley*, 481 U.S. at 555; *Whitebird*, 55 F.3d at 1010-11 (declining to recognize constitutional or statutory right to assistance of counsel in bringing § 3582(c)(2) motion for sentence reduction); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings."). Moreover, Soto provides no basis for the court to conclude that the appointment of counsel would benefit him or the court in addressing his motion. A motion "for compassionate release is not particularly complex factually

or legally." *United States v. Drayton*, No. 10-200018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020); *see United States v. Wilfred*, No. 07-351, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020).  In any event, he has failed to raise any potentially viable claims or any factually or legally complex issues that could arguably justify the appointment of post-conviction counsel. Soto is 54 years old and there is no indication that he is terminally ill, disabled, or otherwise a candidate for compassionate release.  Thus, the court finds that the discretionary appointment of counsel is not warranted.  *See* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require"). Accordingly, Soto's motion for the appointment of counsel is without merit.

III.   Compassionate Release

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the

4

> defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

A.    Exhaustion of Administrative Remedies

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP).  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf.  *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he

exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court.  Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, Soto appears to have exhausted his administrative remedies.  On March 31, 2021, Soto submitted a request for compassionate release to Warden Paul Adams ("Warden Adams"), the warden of the facility where he is housed.  On April 23, 2021, Warden Adams denied Soto's request, explaining that Soto's "concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence." Although Soto complied with the exhaustion requirement before filing his motion for

compassionate release, nothing in the motion indicates that extraordinary and compelling reasons exist to release him from confinement.

B.    Criteria for Release

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release he must establish three criteria. *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).   First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii).  *Id.* at 391.  Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]."  *Id.* at 392.  Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[1]  *Id.*; *accord United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

Section 3582(c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release.   Rather, Congress elected to delegate its authority to the

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

Commission.  *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Cooper*, 996 F.3d at 287; *Shkambi*, 993 F.3d at 392. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as extraordinary and compelling.[2]  However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[3]  Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP.  *See Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392. Nevertheless, while recognizing that they are not binding, the court finds that the Commission's policy statement contained in § 1B1.13 and the commentary thereto inform its analysis as to what reasons may be deemed sufficiently extraordinary and compelling to warrant compassionate release.  *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v.*

---

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  U.S.S.G. § 1B1.13 cmt. n.1.

[3] U.S.S.G. § 1B1.13 was last amended on November 1, 2018.  The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum.  The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines.  28 U.S.C. §§ 991(a), 994(a).  At present, the Commission has only one voting member.

*Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).

       1.   <u>Medical Condition</u>

In his motion, Soto, age 54, contends that he is eligible for compassionate release due to his medical problems.  Specifically, Soto claims to suffer from high blood pressure, heartburn, an unspecified heart condition, stomach issues, depression, diabetes, chest pain, and high cholesterol.  In his request to the warden, Soto complained only of diabetes, high blood pressure, and high cholesterol.  Although not binding on the court, § 1B1.13 suggests that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 cmt. n.1(A).

Here, when Soto was interviewed in connection with his Presentence Investigation Report ("PSR"), prepared on July 29, 2014, and later revised on September 3, 2014, he reported that he was diabetic.  He voiced no other health concerns.  The detention facility where he was housed confirmed that he was a non-insulin dependent diabetic and that he was prescribed Metformin to treat the condition.

According to Soto's BOP medical records compiled on July 7, 2021, he has been diagnosed with diabetes mellitus (type II), hypertension (high blood pressure), low back pain (lumbago), chest pain (unspecified), hyperlipidemia (high cholesterol), depressive disorder, angina pectoris, and atherosclerosis.  Soto is prescribed Glipizide to treat his diabetes, aspirin for his diabetes, Atorvastatin to manage his cholesterol, Isosorbide Monitrate for chest pain, Lisinopril to control his blood pressure, Metformin to treat his diabetes, Nitroglycerin as needed for chest pain, and Sertraline to address his depression.  With regard to his Type 2 diabetes, laboratory reports dated July 8, 2021, and March 18, 2021, show both his glucose levels (251 mg/dL and 229 mg/dL, respectively, with 70-109 mg/dL being the normal range) and his A1c readings [4] (7.6% and 7.1%, respectively) to be elevated, which is indicative of diabetes.  Neither of these laboratory reports however, reflects that Soto suffers from hyperlipidemia, listing total cholesterol levels of  98 mg/dL and 70 mg/dL, respectively, well below the 200 mg/dL threshold for high cholesterol.  Further, Soto's hypertension also appears to be well-controlled.  His most recent blood pressure readings recorded in his medical records, 112/77 on June 22, 2021, 127/84 on May 25, 2021, 137/94 on April 20, 2021, and 128/78 on February 17, 2021, indicate that his blood pressure is either normal or that he is merely at risk of having high blood pressure.[5]

---

[4] A hemoglobin A1c test is a method for measuring blood sugar.  According to the Centers for Disease Control and Prevention ("CDC"), a normal A1c level is below 5.7%, a level of 5.7% to 6.4% indicates prediabetes, and a level of 6.5% or more denotes diabetes.

[5] According to the CDC, a "Normal" systolic level is less than 120 mm Hg with a diastolic of less than 80 mm Hg; the "At Risk" systolic range is 120 to 139 mm Hg with a diastolic range of 80 to 89 mm Hg; and a "High Blood Pressure" systolic level is 140 mm Hg or higher with a diastolic of 90 mm Hg or higher.

The status of Soto's heart condition is unclear.  On February 17, 2021, when Soto was evaluated by Amy Armel, P.A., a history of hypertension was noted, but no history of heart disease or heart surgery was recorded.  She also reported that Soto was denying any active chest pain or prior cardiac history/stents and commented that he indicated that he had not used any nitroglycerin in the past week.  On observation, his cardiovascular system was within normal limits.  On February 22, 2021, Gregory Mims, M.D., diagnosed Soto with coronary artery disease (CAD), noted a history of stents and that Soto had not had a recommended cardiac catheterization, and continued him on his heart medications.  Then, on March 3, 2021, Soto had chest x-rays which revealed "no radiographic evidence of an acute cardiopulmonary process."  Subsequently, on March 17, 2021, Soto underwent an electrocardiogram which revealed a normal sinus rhythm and resulted in a finding of a normal ECG (electrocardiogram).  Soto is currently classified as a BOP Medical Care Level 2 inmate.  Pursuant to the BOP's Clinical Practice Guidance, dated May 2019, "Care Level 2 inmates are stable outpatients who require clinician evaluations monthly to every 6 months.  Their medical and mental health conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring.  Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time."

None of Soto's medical conditions are terminal or substantially diminish his ability to provide self-care, nor do they otherwise present extraordinary and compelling reasons justifying compassionate release.  *See Thompson*, 984 F.3d at 433.  To the contrary, Soto's conditions are well controlled with monitoring and medication.  *See id.*  The court acknowledges that, according to the CDC website, some of Soto's underlying medical conditions—diabetes, coronary artery

disease, and hypertension—can make him more likely to become severely ill should he contract COVID-19[6]; nonetheless, such commonplace afflictions do not make Soto's case "extraordinary." *See id*. at 434.

According to the CDC, 34.2 million people in the United States, approximately 10.5% of the population, have diabetes.  Of those, 90 to 95% have Type 2 diabetes.  Due to its prevalence, diabetes cannot be considered "extraordinary" in order to warrant compassionate release.  *See United States v. Hodgin*, No. 4:15-CR-40110-02-KES, 2021 WL 928179, at *3 (D.S.D. Mar. 11, 2021) (denying compassionate release to inmate who suffers from Type 2 diabetes, kidney disease, hypertension, hyperlipidemia, arthritis, and several other medical conditions); *United States v. Williams*, No. CR 15-83-SDD-EWD, 2021 WL 414825, at *3 (M.D. La. Feb. 5, 2021) (rejecting motion for compassionate release filed by inmate with Type 2 diabetes and obesity because there was no evidence these conditions had diminished his ability to provide self-care within the facility); *United States v. Cotto*, No. CV 16-36, 2020 WL 5761192, at *2 (E.D. La. Sept. 28, 2020) (recognizing the seriousness of diabetes and obesity but denying compassionate release because inmate had not shown that he was unable to take care of himself within the confines of the facility or that the BOP could not manage his medical conditions appropriately in view of medical records showing that he was being administered the necessary care); *United States v. Dressen*, No. 4:17-CR-40047-01-KES, 2020 WL 5642313, at *3 (D.S.D. Sept. 22, 2020) (denying compassionate release because the defendant did not identify "how his Type 2 diabetes prevents him from providing self-care in a correctional facility setting or how it amounts to extraordinary

---

[6] In relevant part, the CDC states that adults who have diabetes and heart conditions (such as coronary artery disease and hypertension) can be more likely to become severely ill from COVID-19.

and compelling circumstances"); *United States v. Jeffers*, 466 F. Supp. 3d 999, 1007 (N.D. Iowa 2020) (finding that the defendant had not demonstrated extraordinary and compelling circumstances when his diabetes and hypertension were controlled, monitored, and managed by the BOP).

Similarly, according to the CDC, 45% of the adults in the United States (108 million) have hypertension, and of those, only about 24% have their condition under control.  In addition, more than 12% of the adult population of the United States (29 million) has high cholesterol.  Further, approximately 18.2 million adults age 20 and older (about 6.7%) have coronary artery disease. In view of their pervasiveness, high blood pressure, high cholesterol, and coronary artery disease cannot be deemed "extraordinary" in order to merit compassionate release.  *See Thompson*, 984 F.3d at 434 (noting that neither hypertension nor high cholesterol made the defendant's case "extraordinary" because "nearly half of the adult population in the United States suffers from hypertension" and "roughly 12% of Americans suffer from high cholesterol"); *United States v. Slone*, No. 7:12-05-KKC-4, 2021 WL 164553, at *1 (E.D. Ky. Jan. 19, 2021) (holding that inmate who suffered from heart disease (for which he had a stent), chronic obstructive pulmonary disease (COPD), high cholesterol, obesity, and depression had not established extraordinary and compelling reasons for compassionate release as his condition was not terminal and did not diminish his ability to provide self-care within the prison environment); *United States v. Durham*, No. 3:18-cr-251-MOC-DCK-1, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020) (finding the fact that the defendant has hypertension, a condition that may increase his risk for severe illness from COVID-19, without more, does not present an "extraordinary and compelling reason" for

13

compassionate release); *United States v. Wilson*, No. 2:18cr132, 2020 WL 4901714, at *5 (W.D. Wash. Aug. 20, 2020) (rejecting the notion that inmate's hypertension claim was sufficient to justify early termination of sentence).

In this instance, Soto's BOP records reveal that he is housed in general population, is ambulatory, has no medical restrictions, has regular duty work assignments, is cleared for food service, and his current work assignment is as a food service worker in the dining room.  He is able to provide self-care in the institutional setting and is not limited in his activities of daily living.   Clearly, Soto's chronic medical conditions did not hamper or prevent him from committing his offense of conviction in 2010-2011 or from inflicting corporal injury on his wife in 2013.  Moreover, as the Government points out, Soto's release plan lists remodeling and new home construction as his intended employment, a job which requires hard labor and is physically demanding—a position that is not conducive to a person claiming to have serious and debilitating medical conditions warranting an early release from prison.  As a consequence, Soto has failed to establish the existence of medical conditions that would constitute extraordinary and compelling reasons to reduce his sentence.

### 2.   Other Reasons

Soto also seeks compassionate release due to his efforts at rehabilitation and the presence of COVID-19 in prison.

#### a.   Rehabilitation

Soto maintains that his post-sentence rehabilitation, evidenced by the courses and programs he has completed, such as earning his general equivalency diploma (GED), as well as his lack of

disciplinary infractions, establishes extraordinary and compelling reasons for compassionate release.  Although he provides the court with a list of commendable achievements and goals, Soto has not presented sufficient grounds for compassionate release.  While the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t); *see Shkambi*, 993 F.3d at 392; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."); *cf. United States v. Whitehead*, 986 F.3d 547, 551 (5th Cir. 2021) (upholding the denial of a sentence reduction from a life sentence and finding that the court may, but is not required, to consider a defendant's post-conviction rehabilitative efforts when evaluating a motion for reduction under § 404 of the First Step Act).  Moreover, Soto refused to participate in BOP courses regarding antisocial peers and cognitions, programs that could have been beneficial for his successful rehabilitation.

        b.    <u>COVID-19</u>

In his motion, Soto contends that he is a vulnerable individual for contracting COVID-19 according to the CDC guidelines because of his pre-existing medical conditions and other concerns

about his health.  As of August 17, 2021, the figures available at www.bop.gov list 3 inmates (out of a total inmate population of 1,925) and 0 staff members at FCI Hazelton as having confirmed positive cases of COVID-19, 130 inmates and 79 staff members who have recovered, and 1 inmate who succumbed to the disease.  Thus, it appears that the facility where Soto is housed is handling the outbreak appropriately and providing adequate medical care.

Although Soto expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Soto, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated.  *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D.

La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Moreover, the BOP is in the process of administering the COVID-19 vaccine to inmates and staff. To date, the BOP has administered approximately 210,906 doses of the vaccine. According to bop.gov, FCI Hazelton, where the defendant is housed, has fully inoculated 1,985 inmates and 390 staff members. Indeed, according to Soto's BOP medical records, he received the first dose of the Pfizer-BioNTech vaccine on April 7, 2021, and the second dose on April 28, 2021. In the Fifth Circuit and elsewhere, courts have denied early release to inmates with a variety of medical conditions who have already been vaccinated for COVID-19. *See United States v. Walker*, No. 20-cr-20027, 2021 WL 2474088, at *3 (C.D. Ill. June 17, 2021) (holding that because defendant was fully vaccinated, his underlying health conditions—diabetes, heart disease, high blood pressure, asthma, and substance abuse—alone, were insufficient to establish extraordinary and compelling reasons justifying compassionate release); *United States v. Parham*, No. 1:19-CR-133-LG-RHW-1, 2021 WL 1911899, at *2 (S.D. Miss. May 12, 2021) (finding that "generalized concerns of contracting COVID-19[] are not an 'extraordinary and compelling

reason'" where the defendant had received the COVID-19 vaccine); *United States v. Meyer*, No 1:14-cr-00148-01-MC, 2021 WL 1895240, at \*1-2 (D. Ore. May 11, 2021) (denying compassionate release to inmate with heart disease, obesity, hyperlipidemia, and a history of smoking because he was fully vaccinated and there was a low infection rate at the facility where he was housed); *United States v. Schad*, No. CR 2:17-225-3, 2021 WL 1845548, at \*4 (S.D. Tex. May 5, 2021) (denying compassionate release where the defendant had been fully vaccinated against COVID-19); *United States v. Grummer*, No. 08-CR-4402-DMS, 2021 WL 568782, at \*2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release and noting that "[a]lthough Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19"); *United States v. Beltran*, No. 6:16-CR-00004, 2021 WL 398491, at \*3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to a high-risk inmate with myriad underlying medical conditions who received the vaccine, finding that "vaccination significantly reduces [the] risk of contracting COVID-19 or experiencing complications related to a COVID-19 infection"); *accord United States v. Nunez-Arias*, No. CR H-16-436, 2021 WL 1537323, at \*3 (S.D. Tex. Apr. 19, 2021).

    C.   <u>Section 3553(a) Factors</u>

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the 3553(a) factors); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v.*

*Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020).  It is well recognized that "[c]ompassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693; *accord Keys*, 846 F. App'x at 276 (finding that Defendant's argument that the court gave too much weight to his criminal history, "amount[ed] to a mere disagreement with the court's balancing of the § 3553(a) factors, which is not a sufficient ground for reversal").

The nature and circumstances of Soto's offense of conviction entail his participation in a drug-trafficking conspiracy in 2010 and 2011.  His role in the offense was to supply coconspirators with kilogram quantities of cocaine from various sources for distribution to others in the Eastern and Northern Districts of Texas.  In the factual basis in support of his guilty plea, Soto stipulated that he was responsible for distributing at least 15 kilograms but less than 50 kilograms of cocaine.  He played a leadership role in the drug-trafficking organization by negotiating the sale of cocaine and having others report to him, and his sentence was enhanced accordingly.  In fact, he recruited his then 19- and 20-year-old sons to become involved in the conspiracy, who were subsequently convicted and sentenced as codefendants.

In October 2011, a cooperating source ("CS") negotiated with Soto for the purchase of 5 kilograms of cocaine for $120,000.  Soto's two sons arrived at the site of the planned drug transaction, a Hooter's Restaurant parking lot in Plano, Texas, and surveillance observed one of them place a black bag containing the cocaine in the CS's vehicle.  The CS left with the bag of cocaine after agreeing to return with the money a short time later.  The CS turned the bag containing the 5 bricks of cocaine over to law enforcement agents, which laboratory analysis determined to be 4.972 kilograms of cocaine.  The black bag also contained a white card with

Soto's name written on it.  In 2009, Soto was arrested in Mesquite, Texas, when he arrived at the scene of an impending drug transaction in which he supplied 5 kilograms of cocaine to other individuals, which incident was determined to be relevant conduct to the case at bar.

In 2013, Soto was arrested, pleaded guilty, and was convicted under a false name, "Pedro Garcia-Ochoa," in California for inflicting corporal injury on his spouse for which he was placed on probation for 3 years.  According to the PSR, he had been using the "Garcia-Ochoa" name in the year preceding his arrest in this case, after he was indicted in this district in 2011 under the name Amador Soto, Sr.  With regard to the domestic violence offense, the PSR explains that Soto and his common-law wife of 18 years, with whom he shares 6 children, were involved in an altercation.  Soto had been drinking beer and got angry at his wife when she would not give him money to buy more beer.  Soto struck her multiple time with a closed fist and an open hand to her right shoulder, the left side of her face, and her forehead.  She sustained multiple bruises to her left shoulder, redness and swelling to the left side of her face, and a cut to her forehead.  Their children overheard the fight and ran to a back bedroom in fear.  In addition, Soto has prior arrests for possession of marijuana, possession with intent to distribute drugs, engaging in organized criminal activity, and conspiracy to possess with intent to distribute cocaine.

In view of the nature and circumstances of Soto's offense of conviction, his criminal history, including prior drug offenses and acts of violence, his use of aliases to avoid criminal responsibility, as well his apparent alcohol abuse problem, the court cannot conclude that Soto's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

20

Furthermore, granting Soto compassionate release would fail to provide just punishment for his offense or promote respect for the law.  Although Soto has served about 80% of his sentence, under these circumstances, there is no reason he should not be required to serve his entire sentence.  Affording Soto early release would minimize both the impact of his crime and the seriousness of his offense, while falling short of providing just punishment and adequate deterrence to criminal conduct, a result inconsistent with the sentencing factors set forth in § 3553(a).  *See Chambliss*, 948 F.3d at 693-94.

Finally, it is well settled that "compassionate release is discretionary, not mandatory." *Id.* at 693.  In exercising its discretion, the court finds that Soto has failed to establish that his medical condition, his efforts at rehabilitation, or the presence of COVID-19 in prison constitute extraordinary and compelling reasons to reduce his sentence and release him from prison.

IV.   Conclusion

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)).  Here, Soto's track record is similarly a poor one.  In this instance, there is no reason to believe that Soto would not revert to his prior drug activities and his assaultive conduct, as well as his use of aliases to conceal his criminal behavior, if released from prison at this time.

In sum, Soto has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the

rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same).  As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner."  *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

Consistent with the foregoing analysis, Soto's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release) (#205) is DENIED.

SIGNED at Beaumont, Texas, this 18th day of August, 2021.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE